JEFFREY ROWE *v.* ROSEMARY GOULET ET AL.
(AC 24557)

Dranginis, Flynn and Bishop, Js.

---

Argued March 23—officially released June 28, 2005

*Brian B. Staines,* for the appellant (defendant Kenneth Conrad).

*Eric Onore,* for the appellee (plaintiff).

*Opinion*

BISHOP, J. The defendant Kenneth Conrad[1] appeals challenging the trial court's denial of his motion to open the default that had been entered against him for failure to plead. Conrad claims that the court (1) abused its discretion in denying his motion to open, (2) lacked personal jurisdiction over the parties pursuant to General Statutes § 51-183b and (3) improperly calculated the award of double damages. We reverse in part the judgment of the trial court as it pertains to the award of double damages.

The following facts and protracted procedural history are germane to our review of Conrad's appeal. On July 1, 1989, the plaintiff rented a room in a boarding house at 7 Federal Court in Bristol pursuant to a week to week rental agreement with Conrad and the defendant Rosemary Goulet. The plaintiff returned to the boarding house one evening in February, 1990, and found that he was locked out. The defendants told the plaintiff to get off of the property, even though he was current on his rental payments.

---

[1] The defendant Rosemary Goulet is not a party to this appeal.

Consequently, the plaintiff left the apartment and went to a friend's house where he allegedly attempted suicide because he was very worried about becoming homeless. Soon thereafter, the plaintiff was taken to Bristol Hospital, then transferred to Cedarcrest Hospital in Newington, in which he remained as a patient for approximately three weeks. Following his discharge, the plaintiff went to the boarding house on Federal Court to retrieve his belongings. At that time, he discovered that his property had been placed in the cellar and that several items were missing or damaged.

Thereafter, the plaintiff filed a seven count complaint against the defendants claiming, inter alia, unlawful entry, unlawful entry and detainer, unfair trade practices and infliction of emotional distress. He also sought a temporary injunction that was granted in part. On March 8, 1990, the court held a hearing, at which both defendants were present, regarding whether the temporary injunction should be maintained against them. After the hearing, the court found that there had been an illegal entry and detainer, and the temporary injunction was continued in effect. On March 20, 1990, the defendants entered pro se appearances. On October 12, 1990, Stephen J. Duffy, an attorney, filed an appearance on behalf of Goulet only.[2] On October 18, 1990, the court dismissed the case for failure to prosecute with due diligence pursuant to Practice Book § 14-3. Subsequently, the plaintiff filed a motion to open, which was granted, despite Goulet's objection, on March 14, 1991, and a default for failure to plead was entered against the defendants on October 11, 1991.[3] Although Goulet

[2] On the appearance form, Duffy checked the box that read: "The Defendant," even though there were two defendants. Additionally, he filed pleadings only on behalf of Goulet.

[3] In his brief, Conrad claims that the default was entered in March, 1993. The plaintiff claims in his brief that Conrad was defaulted for failure to plead in March, 1991. On the basis of our review of the record, it appears that Conrad was defaulted on October 11, 1991.

answered the complaint on October 23, 1991, Conrad never filed an answer. During that time period, Duffy was disbarred from the practice of law, and a stay of prosecution was entered by the court on the basis of Duffy's circumstances.

Although the plaintiff's motion for relief from stay was granted on December 13, 1993, it appears from the record that the next significant event in the procedural life of the case was a hearing in damages scheduled for October 5, 2000. On that date, however, because only the plaintiff and his counsel were present, the court continued the hearing to give all parties an opportunity to attend. Ultimately, the hearing in damages was set for June 5, 2002, on which date Christopher M. Reeves, an attorney who had been appointed as trustee for Duffy's clients (and, therefore, in this instance, Goulet), reported to the court that he had contacted both defendants and notified them of the June 5, 2002 hearing date.[4] Although Conrad attended the hearing, Goulet was absent. During the hearing, the plaintiff and Conrad testified and had the opportunity to cross-examine each other and to make arguments to the court. Later, on July 10, 2002, Reeves entered an appearance on behalf of Conrad and filed a motion to open the default against him. That motion was denied after a hearing on May 28, 2003. Subsequently, on August 6, 2003, the court issued its memorandum of decision awarding damages in favor of the plaintiff against the defendants. This appeal followed.

I

Conrad first claims that the court abused its discretion by denying his motion to open the default for failure to plead. He maintains that the procedurally tortured

---

[4] Although the record reflects that Duffy represented only Goulet, Reeves, the trustee for Duffy's clients, contacted both defendants at the court's request.

path of the case justified setting aside the default. Additionally, he claims that the court incorrectly applied Practice Book § 17-43 rather than Practice Book § 17-42 in assessing the motion to open. We disagree.

At the outset, we set forth general precepts relating to the court's response to a motion to open a default. "A motion to open . . . is addressed to the [trial] court's discretion, and the action of the trial court will not be disturbed on appeal unless it acted unreasonably and in clear abuse of its discretion." (Internal quotation marks omitted.) *Rino Gnesi Co.* v. *Sbriglio*, 83 Conn. App. 707, 711, 850 A.2d 1118 (2004). The motion to open the default, in this case, is governed by Practice Book § 17-42 because the default was entered prior to final judgment. See *Blue Cross/Blue Shield of Connecticut, Inc.* v. *Gurski*, 49 Conn. App. 731, 733, 715 A.2d 819, cert. denied, 247 Conn. 920, 722 A.2d 809 (1998). Section 17-42 provides in relevant part: "A motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for good cause shown . . . ."

In deciding whether to open a default, the court may consider the presence of mistake, accident, inadvertence, misfortune or other reasonable cause, including such factors as the seriousness of the default, its duration, the reasons therefor and the degree of contumacy involved, as well as the totality of the circumstances. *Higgins* v. *Karp*, 243 Conn. 495, 508, 706 A.2d 1 (1998). Additionally, "[i]t is the established policy of the Connecticut courts to be solicitous of pro se litigants and when it does not interfere with the rights of other parties to construe the rules of practice liberally in favor of the pro se party. . . . [T]he right of self-representation [however] provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *State* v. *Van Eck*, 69 Conn. App. 482, 493, 795 A.2d 582, cert. denied, 260

Conn. 937, 802 A.2d 92, cert. denied, 261 Conn. 915, 806 A.2d 1057 (2002). Furthermore, a court should not open a default when the defendant admits that he received actual notice and chose to disregard the court's authority. *Woodruff* v. *Riley*, 78 Conn. App. 466, 471, 827 A.2d 743, cert. denied, 266 Conn. 922, 835 A.2d 474 (2003). "Negligence is no ground for vacating a judgment, and it has been consistently held that the denial of a motion to open a default judgment should not be held an abuse of discretion where the failure to assert a defense was the result of negligence." (Internal quotation marks omitted.) Id.

In this instance, Conrad presents several arguments to advance his claim that the court should have opened the default. In addition to his claim that the court incorrectly applied Practice Book § 17-43 instead of Practice Book § 17-42 in reviewing the motion to open the default, Conrad also points out that he was a pro se litigant throughout the entire case until July 10, 2002, when Reeves entered an appearance on his behalf, and that the case had languished over the years to such an extent that Conrad thought that the matter had been concluded. On the basis of the foregoing, Conrad argues that the court abused its discretion in denying the motion to open the default.

First, although Conrad asserts that the court applied the requirements of Practice Book § 17-43, instead of Practice Book § 17-42, his contention finds no support in the record. To the contrary, the transcript of the hearing on May 28, 2003, reveals that the court applied Practice Book § 17-42 in rendering its decision to deny the motion open. Therefore, Conrad's argument in that regard is unavailing.

Next, a review of the pleadings and the court's reasoning in denying Conrad's motion to open the default discloses that the court did not abuse its discretion in

denying the motion. Although we agree with Conrad that this case has a protracted and stutter-stepped history, the default for failure to plead was entered against him on October 11, 1991, relatively early in the life of the case. On appeal, Conrad makes no claim that he did not receive notice of the default entered against him, and the court file reveals that Conrad never filed an answer to the complaint.[5] Because Conrad did not file a motion to open the default until May, 2002, it cannot be said that he seasonably responded to the default entered against him. To the extent that Conrad relies on any confusion in the file attendant to Duffy's disbarment, any activity related to Duffy is immaterial to Conrad's claims because Duffy never represented him. It was only after the second hearing in damages in 2002, that Conrad retained counsel who filed, on his behalf, a motion to open the default.

Although we agree with the general proposition that a party to an action is entitled to an adequate notice and opportunity to be heard; *LaRosa* v. *Kline*, 36 Conn. App. 501, 505, 651 A.2d 1324 (1995); nothing in the record suggests that Conrad was deprived of those fundamental due process rights. To the contrary, it appears that the court was keenly sensitive to the parties' rights to participate meaningfully in the proceedings. For example, at the October 5, 2000 hearing in damages, when the court became concerned that both of the defendants were not present, the court deferred its decision in order to ensure that the defendants were aware that the case was proceeding. When Reeves contacted Conrad regarding the second hearing in damages on June 5, 2002, he alerted Conrad to his belief that Conrad should seek the advice of an attorney before proceeding. Nevertheless, Conrad chose to proceed pro se. As

[5] The record discloses that notice of the default for failure to plead was sent to Duffy, Goulet and Conrad. As noted, Duffy filed an answer to the complaint on behalf of Goulet shortly thereafter.

noted, Conrad testified and had the opportunity to cross-examine the plaintiff at that hearing. He also made an oral motion that the case against him be dismissed, which the court denied. In sum, Conrad had adequate notice and the opportunity to participate meaningfully in the hearing in damages.

Furthermore, Conrad, on appeal and at the hearing on the motion to open the default, has not claimed any good cause for his failure to answer the complaint. Conrad's negligence in failing to plead is not a valid ground on which the court was required to open the default. We conclude that the court did not abuse its discretion in denying Conrad's motion to open the default.

II

We next consider Conrad's claim that the court lacked personal jurisdiction over the parties to render its judgment because its decision was not issued within 120 days of the completion of trial in violation of § 51-183b.[6] We disagree.

"Cases interpreting [§ 51-183b] have established that the defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it. . . . We have characterized a late judgment as voidable rather than as void . . . and have permitted the lateness of a judgment to be waived by the conduct or the consent of the parties. . . . Thus, if both parties simultaneously expressly consent to a late judgment, either before the judgment is [rendered], or immediately thereafter, the judgment is valid and binding upon both parties, despite its lateness. Express consent, however, is not required. If a late

---

[6] General Statutes § 51-183b provides in relevant part that a judge "shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

judgment has been rendered and the parties fail to object seasonably, consent may be implied. . . . Because consent may be implied from a failure to object seasonably after a delayed judgment has been rendered, these cases do not support the [notion] that § 51-183b invariably requires the prior consent of both parties in order to waive the time limits the statute imposes.

"These implied consent cases establish that an unwarranted delay in the issuance of a judgment does not automatically deprive a court of personal jurisdiction. Even after the expiration of the time period within which a judge has the power to render a valid, binding judgment, a court continues to have jurisdiction over the parties *until* and *unless they object*." (Emphasis added; internal quotation marks omitted.) *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 835, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003). Such consent may be implied from the conduct of the parties or their attorneys, in proceeding without objection with the trial or argument of the case, in remaining silent until the judgment has been rendered or in failing to object seasonably after the filing of the decision. See *Lawrence* v. *Cannavan*, 76 Conn. 303, 306, 56 A. 556 (1903).

Conrad argues that the court improperly failed to render a decision within 120 days of the first hearing in damages on October 5, 2000. He contends, therefore, that pursuant § 51-183b, the court was precluded from having further hearings on the matter. Conrad also argues that the court improperly failed to render its decision within 120 days of the second hearing in damages on June 5, 2002.

Even if we assume arguendo that the judgment was not in compliance with § 51-183b, Conrad's actions prior to and after the issuance of the memorandum of decision were sufficient to warrant the implication that he

had waived the statutory time requirements. Conrad filed no motion contesting the court's personal jurisdiction over him on the basis of § 51-183b either before or after the court issued its memorandum of decision. Additionally, Conrad continued to participate in scheduled proceedings, including the second hearing in damages as well as the hearing on the motion to open the default, despite the time intervals between hearings. Because Conrad proceeded without objection, remained silent until the judgment awarding damages against him had been rendered and failed to object seasonably after the filing of the decision, we conclude that Conrad, by implication, consented to the timing of the scheduling and rescheduling of the court's hearings and its ultimate judgment in the matter.

III

Conrad's final claim is that the court improperly calculated the award of double damages. We agree.

The court's memorandum of decision reveals that the court awarded the plaintiff $13,347.70 in damages and costs as follows: (1) $2483 in statutory damages pursuant to General Statutes § 47a-18a; (2) double damages in the amount of $4966 ($2483 doubled), pursuant to General Statutes § 47a-46; (3) damages for negligent infliction of emotional distress in the amount of $1500; (4) attorney's fees in the amount of $4217.50; and (5) costs in the amount of $181.20. The court did not award treble or punitive damages pursuant to the plaintiff's claim under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. The court also did not award any damages for intentional infliction of emotional distress.

Conrad challenges the propriety of the court's calculation of double damages pursuant to § 47a-46, claiming that, in effect, the court either awarded damages twice for the same behavior or, in the alternative, incorrectly

awarded treble damages. He claims that once the court found that the plaintiff was entitled to an award of actual damages pursuant to § 47a-18a, the court could not make a separate award for actual damages pursuant to § 47a-46. Thus, he asserts that at most, he could be held liable to pay actual damages ($2483) pursuant to either §§ 47a-18a or 47a-46. He argues that only a single award of actual damages under either statutory provision could be doubled under § 47a-46 for an additional sum of $2483, making $4966 the total permissible award pursuant to the plaintiff's claims under §§ 47a-18a and 47a-46. We agree with Conrad.

From our review of the judgment, it appears that the court separately assessed the plaintiff's actual damages pursuant to §§ 47a-18a and 47a-46, and then doubled the award of damages under § 47a-46, thereby rendering an award, in effect, for treble damages. The plaintiff claims that he was entitled to a separate award of actual damages under §§ 47a-18a and 47a-46, and that, in addition, he was entitled to an award of double damages pursuant to § 47a-46. We disagree on the basis of the general rule prohibiting more than one recovery of actual damages for the same injury.

Section 47a-18a provides in relevant part: "If the landlord makes an entry prohibited by section 47a-16[7] . . . the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. . . ." Section 47a-46 provides: "The party aggrieved may recover in a civil action double damages and his costs against the defendant, if it is found on the trial of a complaint brought under section

---

[7] General Statutes § 47a-16 (d) provides: "A landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by section 47a-16a, (3) pursuant to a court order, or (4) if the tenant has abandoned or surrendered the premises."

47a-43[8] that he entered into the land, tenement or dwelling unit by force or after entry held the same by force or otherwise injured the party aggrieved in the manner described in section 47a-43." Section 47a-46, accordingly, provides for double damages when the court makes a finding of forcible entry pursuant to § 47a-43. Section 47a-18a allows for actual damages when the landlord unlawfully enters the premises in violation of § 47a-16.

In its August 6, 2003 memorandum of decision, the court noted that in 1990, it determined that there had been an illegal entry and detainer. Thus, the court concluded, the plaintiff was entitled to damages of $2483 representing the fair market value of items either missing or damaged as a result of Conrad's illegal entry in violation of § 47a-18a. Additionally, the court found that in making an illegal entry and detainer, Conrad violated the provisions of § 47a-43. Accordingly, the court made an award of $4966 ($2483 doubled) for Conrad's violation of § 47a-43 and added that award to the award for statutory damages pursuant to § 47a-18a. As a consequence, the court made two awards of compensatory damages.

Thus, we confront the legal question of whether a plaintiff is entitled to recover compensatory damages twice for the same conduct. Because such a determination involves a question of law, our review is plenary.

---

[8] General Statutes § 47a-43 (a) provides: "When any person (1) makes forcible entry into any land, tenement or dwelling unit and with a strong hand detains the same, or (2) having made a peaceable entry, without the consent of the actual possessor, holds and detains the same with force and strong hand, or (3) enters into any land, tenement or dwelling unit and causes damage to the premises or damage to or removal of or detention of the personal property of the possessor, or (4) when the party put out of possession would be required to cause damage to the premises or commit a breach of the peace in order to regain possession, the party thus ejected, held out of possession, or suffering damage may exhibit his complaint to any judge of the Superior Court."

See *LMK Enterprises, Inc.* v. *Sun Oil Co.*, 86 Conn. App. 302, 306, 860 A.2d 1229 (2004).

"The rule precluding double recovery is a simple and time-honored maxim that [a] plaintiff may be compensated only once for his just damages for the same injury . . . ." (Internal quotation marks omitted.) *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 22 n.6, 699 A.2d 964 (1997). Connecticut courts consistently have upheld and endorsed the principle that "a litigant may recover just damages for the same loss only once. The social policy behind this concept is that it is a waste of society's economic resources to do more than compensate an injured party for a loss and, therefore, that the judicial machinery should not be engaged in shifting a loss in order to create such an economic waste." (Internal quotation marks omitted.) *Mack* v. *LaValley*, 55 Conn. App. 150, 169, 738 A.2d 718, cert. denied, 251 Conn. 928, 742 A.2d 363 (1999). "[D]uplicated recoveries must count as overcompensation by any standard. In general, two different measures should not be used to compensate for the same underlying loss . . . ." 1 D. Dobbs, Law of Remedies (2d Ed. 1993) § 3.3 (7), p. 312. Duplicated recoveries, furthermore, must not be awarded for the same underlying loss under different legal theories. Id., p. 315; see, e.g., *Jonap* v. *Silver*, 1 Conn. App. 550, 561–62, 474 A.2d 800 (1984) (finding duplicative damages awarded for invasion of privacy by appropriation as well as damages for invasion of privacy by false light). Although a plaintiff is entitled to allege respective theories of liability in separate claims, he or she is not entitled to recover twice for harm growing out of the same transaction, occurrence or event. *Jonap* v. *Silver*, supra, 561.

In the present case, the wrong complained of constituted one transaction, the import of which was to deny the tenant the exclusive possession and control of the entire premises. A fair reading of the record discloses

that the acts of Conrad in entering the apartment without the plaintiff's permission in a nonemergency situation and locking the plaintiff out were part of a continuous, single transaction. See id., 561–62. Therefore, the damages awarded under § 47a-46 encompass the same conduct as the damages awarded under § 47a-18a. Consequently, the court overcompensated the plaintiff by twice awarding him actual damages for the same conduct. We conclude, on the basis of our review of its decision, that the court awarded the plaintiff double recovery for the same conduct by including a sum for actual damages in its award pursuant to both § 47a-18a and § 47a-46.

Consistent with its intention to award double damages, the court, pursuant to the double damages provision of § 47a-46, should have doubled the actual damages found under § 47a-18a. As a consequence, the court's award to the plaintiff for Conrad's forcible entry and detainer should have been $4966, double the amount of actual damages, and not the greater amount awarded that equates to treble damages. See, e.g., *Jack* v. *Scanlon*, 4 Conn. App. 451, 453, 495 A.2d 1084, cert. denied, 197 Conn. 808, 499 A.2d 59 (1985).

The judgment is reversed only as to the award of double damages and the case is remanded with direction to reduce the judgment by $2483 and to render judgment in favor of the plaintiff accordingly. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.