## MICHAEL LAWTON *v.* MARC S. WEINER ET AL.
### (AC 25114)

Flynn, DiPentima and Stoughton, Js.

Argued April 4—officially released October 4, 2005

*Charles D. Houlihan, Jr.*, for the appellants (named defendant et al.).

*Randall J. Carreira*, for the appellee (plaintiff).

*Opinion*

DiPENTIMA, J. The defendants Marc S. Weiner and TMG Marketing, Inc. (TMG),[1] appeal from the judgment

---

[1] Theresa Weiner and George Weiner were also defendants before the trial court, but the claims against them were withdrawn, and they are not parties to this appeal. We therefore refer in this opinion to Marc Weiner and TMG as the defendants.

rendered against them after a hearing in damages. On appeal, they raise claims attacking the court's subject matter jurisdiction, the propriety of the default and the damages awarded. We affirm the judgment of the trial court.

An acrimonious business relationship between the plaintiff, Michael Lawton, and the defendants began the parties' journey to this court. A tortuous and contentious procedural history exacerbated the conflict and made its resolution needlessly arduous for all concerned. The parties and counsel are clearly responsible for much of the delay[2] and confusion through inartful and unnecessarily repetitive pleading, on the one hand, and a disregard for our rules of practice, on the other.

According to the operative complaint at the hearing in damages, the plaintiff, a professional photographer, and the defendants agreed that the defendants would market the plaintiff's photography. In that capacity, the defendants represented the plaintiff in ongoing negotiations with LaserMaster Corporation (LaserMaster) regarding a copyright license agreement. The plaintiff also put the defendants in communication with David Graveen, who owned a business involving poster and image reproduction and marketing. In order to market his photography, the plaintiff provided the defendants with a $6500 laptop computer containing $3000 worth of Graveen's poster project and twenty-three of the plaintiff's panoramic photographs. The parties' relationship rapidly deteriorated. Weiner began to interfere and to compete with the plaintiff's business and to engage in a pattern of intimidation and harassment aimed at the plaintiff, his family and Graveen. As a result of the conflict between the parties, LaserMaster refused to

---

[2] The court is aware of the untimely death of the Honorable Andre Kocay during the pendency of posttrial proceedings.

enter into the licensing agreement with the plaintiff until he and the defendants resolved their differences.[3]

We turn now to the procedural history relevant to the issues on appeal. The plaintiff brought an action against the defendants in July, 1998, alleging in count one, interference with business relations; in count two, conversion; in count three, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; in count four, breach of fiduciary duty; in count five, breach of an implied duty of good faith and fair dealing; in counts six and seven, defamation; in count eight, violation of the Connecticut Antitrust Act, General Statutes § 35-24 et seq.; and in count nine, recording of private telephone calls in violation of General Statutes § 52-570d (c). After the defendants filed a notice of compliance with discovery requests on February 8, 1999, the plaintiff filed a motion for sanctions against the defendants for failure to comply fully with his discovery requests. On May 21, 1999, the court ordered the defendants to "provide substantive responses to all discovery requests within fourteen days . . . ." On June 15, 1999, the plaintiff filed a motion for default for the defendants' failure to comply with the May 21, 1999 discovery order. The court granted the motion for default on June 29, 1999.

---

[3] In December, 1996, the parties entered into a settlement agreement under which the plaintiff was to pay the defendants $22,000 for services provided, contingent on a successful deal between him and LaserMaster. The plaintiff's obligation was evidenced by a note in the amount of $22,000. In addition, the plaintiff transferred ownership of the computer to TMG. For his part, Weiner signed a letter informing LaserMaster that he and the plaintiff had settled their differences and that LaserMaster could work with the plaintiff directly. The agreement was subject to arbitration. In connection with the agreement, the plaintiff also signed a release discharging the defendants from liability arising out of any dealings with LaserMaster. The plaintiff and LaserMaster subsequently entered into a licensing agreement in February, 1997. In October, 1997, the defendants invoked the arbitration clause, and in February, 1999, the arbitrator issued an award in their favor.

On July 7, 1999, the plaintiff filed a motion to cite in, as defendants, Marc Weiner's parents, Theresa Weiner and George Weiner.[4] The court granted the motion on July 19, 1999, and ordered the plaintiff to file an amended complaint reflecting the interests of Theresa Weiner and George Weiner. The defendants filed a motion to set aside the default on July 26, 1999, which the court denied on August 16, 1999. Pursuant to the court's July 19, 1999 order, the plaintiff filed an amended complaint on July 28, 1999, incorporating Theresa Weiner and George Weiner into the original complaint and adding two new counts alleging defamation by the new defendants. The defaulted defendants, Marc Weiner and TMG, filed a notice of defenses on August 27, 1999, to which the plaintiff successfully objected as untimely. On September 2, 1999, the plaintiff filed an amended complaint materially identical to the July 28, 1999 complaint.[5] A hearing in damages was held in January, 2000. On July 13, 2000, the defendants filed a motion to reopen the hearing in damages in order to submit certain evidence challenging the credibility of the plaintiff. That motion was ultimately acted on and denied in January, 2004.

On February 13, 2001, the court, *Kocay, J.*, issued a memorandum of decision. The court found that with respect to counts one, four and five, the defendants interfered with the LaserMaster contract. The court awarded damages of $55,000 plus $15,000 for a Halon

---

[4] We note that the motion to cite additional parties was filed in the name of Carol Lawton, the former wife of Michael Lawton, as plaintiff. Carol Lawton was not a party to this action, although she did bring a separate action against the defendants. There were no objections before the trial court or challenges on appeal to the propriety of the plaintiff's motion; accordingly, we do not address it.

[5] Two more amended complaints followed on January 9 and February 13, 2003. At oral argument both parties agreed that the September 2, 1999 complaint was the operative complaint for the purpose of the hearing in damages.

machine that had been part of the initial proposed contract with LaserMaster. On count two, the court awarded $3000 as the depreciated value of the computer, $3000 for conversion of the posters and $172,500 for the conversion of the twenty-three panoramic images. On the CUTPA count, the court awarded the same compensatory damages as awarded in counts one, two, four and five, inclusive. In addition, the court awarded $245,000 in punitive damages and $29,156.92 in attorney's fees. The court also awarded $10,000 on counts six and seven. The court found that the plaintiff had proven the allegations of counts eight and nine as well, but awarded no additional damages as "the compensatory and punitive damages [had] been found in earlier counts."

The defendants filed a motion for reconsideration on March 2, 2001, which was denied by the court on March 16, 2001. The court, however, on March 28, 2001, granted the defendants' March 26, 2001 motion for reconsideration of the court's decision denying their motion for reconsideration. Hearings on the motion were held on April 24, 2001. On April 25, 2001, the defendants filed a second motion to open the hearing in damages. Judge Kocay died in February, 2003. On June 23, 2003, and January 26, 2004, the court, *Dunnell, J.,* reheard the defendant's motion for reconsideration. On January 26, 2004, the defendants filed a motion to dismiss for lack of standing, alleging that the plaintiff was not the proper party to bring the complaint as it was his company, Grafica, Inc. (Grafica), that entered into the contract with LaserMaster. The defendants filed a motion to set aside the default on the same day. Judge Dunnell denied both the motion to dismiss and the motion to set aside on January 26, 2004. On September 29, 2004, Judge Dunnell issued a memorandum addressing the defendants' motion for reconsideration in which she concluded that there was "substantial and competent

evidence to support the original decision of the court." This appeal followed.

The defendants' statement of issues set forth the following "points of error": (1) the court's award of damages was improper; (2) the default was rendered void by the plaintiff's repeated amendment of the complaint; (3) the plaintiff lacked standing; (4) the defendants were denied due process because their counsel learned of the default judgment after the time to file a notice of defense had expired; and (5) the defendants were denied due process by the court's delay in rendering a decision on damages and certain motions.

I

The defendants first claim that the court's failure to hold an evidentiary hearing on the motion to dismiss, filed three years after the memorandum of decision, was improper. The motion asserted that the plaintiff did not have standing to allege interference with a business relationship because the contract that provided the basis for calculating damages was signed by the plaintiff as president of his company, Grafica, and not in his individual capacity.

"The standard of review of a motion to dismiss is . . . well established. In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, 273 Conn. 287, 291, 869 A.2d 1193 (2005). A party may raise a question of subject matter jurisdiction at any time. *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). A hearing is

required only when a motion to dismiss raises a genuine issue of material fact. *Sagamore Group, Inc.* v. *Commissioner of Transportation*, 29 Conn. App. 292, 298, 614 A.2d 1255 (1992). A determination regarding a trial court's subject matter jurisdiction is a question of law, and our review is plenary. *First Union National Bank* v. *Hi Ho Mall Shopping Ventures, Inc.*, supra, 291.

The complaint alleged, inter alia, that the plaintiff had put the defendants in touch with LaserMaster for the purpose of negotiating an agreement for the licensing rights owned by the plaintiff, that the defendants undermined the business relationship between the plaintiff and LaserMaster, and that, as a result, LaserMaster refused to conduct any business with the plaintiff. Those actions, the plaintiff claimed, interfered with his "business, contracts and business expectations."[6] "[I]n order to recover for a claim of tortious interference with business expectancies, the claimant must plead and prove that: (1) a business relationship existed between the plaintiff and another party; (2) the defendant intentionally interfered with the business relationship while knowing of the relationship; and (3) as a result of the interference, the plaintiff suffered actual loss." *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 32–33, 761 A.2d 1268 (2000). There is no requirement that the claimant plead or prove breach of a contract. Id. The claimant merely need plead and prove that he suffered loss as a result of tortious conduct by the defendants that interfered with a business relationship. The licensing agreement that was subject to negotiations between the plaintiff and LaserMaster was for the benefit of the plaintiff regardless of whether the final contract was signed by the plaintiff in his

[6] The plaintiff testified at the hearing in damages that as a result of the defendants' alleged machinations, he was required to extend the duration of the contract from five to eight years, with no corresponding increase in compensation, and he had to forgo a Halon machine worth $15,000.

individual capacity or as the president of his company, Grafica. The defendants' motion to dismiss raised no material issue of disputed fact in that regard. Accordingly, the plaintiff had standing to allege interference with his business relations, and the defendants' claim that they were entitled to a hearing on the motion to dismiss fails.

II

The defendants next claim that their due process rights under article first, § 10, of the constitution of Connecticut were violated because the time period for filing a notice of defense expired before they learned of the default. In considering the defendants' claim, we take into account the following additional facts. The court granted the plaintiff's motion for default on June 29, 1999. Notice was sent to the defendants' counsel of record on July 2, 1999. The defendants filed a motion for clarification and a motion to set aside the default on July 26, 1999. The court granted the motion for clarification on July 29, 1999, but denied the motion to set aside the default on August 16, 1999. The defendants filed a notice of defenses on August 27, 1999, to which the plaintiff objected on August 31, 1999. The court sustained the objection on November 15, 1999.

We review the court's decision granting or denying a late filing of a notice of defenses for abuse of discretion. *Whalen* v. *Ives*, 37 Conn. App. 7, 20, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995). "In determining whether the trial court has abused its discretion, we must make every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) Id., 21. "Pursuant to [Practice Book] § 367 [now § 17-34 (a)], a defaulted defendant who files a timely notice of defenses can contradict the allegations of the complaint and prove matters of defense in addition to contesting the amount of dam-

ages. This approximates what the defendant would have been able to do if he had filed an answer and special defenses. In order to obtain this extraordinary relief, the defendant must act within ten days of the notice of a default '[i]n all actions [in which] there may be a hearing in damages . . . .' Practice Book § 368 [now § 17-35 (b).] A party who allows the ten day period from the notice of a default to expire without filing a notice of defenses does so at his peril." *Whalen* v. *Ives*, supra, 20.

Although the defendants were provided notice of the default on July 2, 1999, they did not file a notice of defenses until August 27, 1999, fifty-six days later and, accordingly, forty-six days late. On July 26, 1999, when the defendants filed their motion for clarification, they clearly were aware of the default. Thus, although they claim that their delayed receipt of the notice of default caused them to file their late notice of defenses, they actually filed the notice thirty-one days after they knew the default had entered. They fail to provide any explanation for that delay. Moreover, "[o]ur Supreme Court has noted that actual receipt of notice . . . is not a prerequisite so long as the procedure established by law for affording notice has a reasonable certainty of resulting in such notice and so long as that procedure has been followed." (Internal quotation marks omitted.) *Moore* v. *Brancard*, 89 Conn. App. 129, 133, 872 A.2d 909 (2005). The defendants have provided us with no evidence indicating that the established procedure was not followed in the present case. Accordingly, we conclude that the court did not abuse its discretion in sustaining the plaintiff's objection to the defendants' late notice of defenses.

III

The defendants next claim that they were denied procedural due process because of the court's delay in rendering a decision on the hearing in damages and on

certain of their motions.[7] They refer in particular to the court's decisions on their March 26, 2001 motion for reconsideration, July 13, 2000 and April 25, 2001 motions to open the hearing in damages, and January 26, 2004 motion to set aside the default. The defendants argue in essence that they were prejudiced by the delay because by the time the court actually acted on those motions, the case and the motions themselves were so old that the court did not seriously consider them. They claim that as a result of the delay, they are entitled to an evidentiary hearing to prove compliance with the discovery order underlying the default. We review the court's actions for abuse of discretion. See *Merritt* v. *Fagan*, 78 Conn. App. 590, 593, 828 A.2d 685, cert. denied, 266 Conn. 916, 833 A.2d 467 (2003) (motion to open default); *Pagliaro* v. *Jones*, 75 Conn. App. 625, 638–39, 817 A.2d 756 (2003) (motion to open evidence);

---

[7] The defendants also claim that they were denied due process because the decision on damages was not reconsidered by the judge presiding at the hearing on damages. They provide no authority to support the proposition that they have a constitutional right to such review. They also do not indicate that they ever raised that claim before the trial court. Rather, the record indicates the contrary. The defendants sought action on the motion for reconsideration by Judge Dunnell, despite the concern she expressed that she could not properly make credibility determinations regarding the witnesses and would in effect be sitting as an appellate court.

"It is well settled that the trial court can be expected to rule only on those matters that are put before it. . . . With only a few exceptions . . . we will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *Merritt* v. *Fagan*, 78 Conn. App. 590, 600–601, 828 A.2d 685, cert. denied, 266 Conn. 916, 833 A.2d 467 (2003). Moreover, "[w]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Collard & Roe, P.C.* v. *Klein*, 87 Conn. App. 337, 352, 865 A.2d 500, cert. denied, 274 Conn. 904, 876 A.2d 13 (2005). As that claim was not raised before the trial court and was briefed inadequately, we decline review.

*Van Nest* v. *Kegg*, 70 Conn. App. 191, 195, 800 A.2d 509 (2002) (motion for reconsideration).

Pursuant to General Statutes § 51-183b, judgment in a civil action must be rendered no later than "one hundred and twenty days from the completion date of the trial of such civil cause" unless the parties waive the provisions of the section. The trial is not considered completed for the purpose of calculating the 120 days until after the filing of trial briefs. *Frank* v. *Streeter*, 192 Conn. 601, 604, 472 A.2d 1281 (1984). The hearing in damages was held in January, 2000. The court permitted the parties, at their request, to file briefs three weeks after they obtained transcripts of the hearing. The plaintiff filed his brief on July 25, 2000. There is no record that the defendants ever filed a brief. The decision of the court, which was issued on February 13, 2001, was rendered more than 200 days after the trial ended and the briefs were due. We conclude, however, that although the judgment of the court was not rendered within the 120 period prescribed by § 51-183b, the defendants waived any objection under the statute. If the parties to an action fail to object seasonably to a late judgment, waiver may be implied. *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 835, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003); see *Rowe* v. *Goulet*, 89 Conn. App. 836, 845–46, 875 A.2d 564 (2005). At no time before or after the decision was rendered did the defendants bring to the trial court's attention the untimeliness of the court's decision. The defendants did not challenge the court's undue delay in rendering its decision until they appealed more than three years after the decision was issued.

The court, *Kocay, J.*, held hearings on the motion to reconsider on April 24, 2001. Following Judge Kocay's death in February, 2003, the court, *Dunnell, J.*, reheard the defendants' motion for reconsideration on June 23, 2003, and January 26, 2004. In a decision issued Septem-

ber 29, 2004, Judge Dunnell concluded that the defendants' motion essentially sought to reopen the default, an issue Judge Kocay had not considered open for discussion, and determined that the record supported the original decision of the court. As with the issuance of the court's decision on damages, the defendants at no time objected to the delay in the court's reaching a decision on their motion for reconsideration. Because the defendants failed to object seasonably, we presume that they acquiesced in the delay. See *Rowe* v. *Goulet,* supra, 89 Conn. App. 845–46; see also *Palomba* v. *Gray,* 208 Conn. 21, 34, 543 A.2d 1331 (1988).

The defendants' two motions to open the hearing in damages, filed July 13, 2000, and April 21, 2001, sought to introduce two complaints filed by the plaintiff in two separate actions, the contents of which allegedly contradicted the plaintiff's testimony at the hearing in damages. Both motions were denied by the court, *Dunnell, J.,* on January 26, 2004. Once again, the record does not disclose that the defendants, over the course of more than three years, ever queried the court about the status of their motions, and we can only conclude that they waived any objection to the delay.

Finally, the defendants challenge the court's denial of their motion to set aside the default. The defendants filed their motion to set aside the default on January 26, 2004, and it was denied the same day by the court. They claim that the court improperly dismissed the motion on the ground that the case had been pending for so long and not on the merits of the motion. Practice Book § 17-43 (a)[8] provides in relevant part: "Any judg-

[8] The defendants filed their motion to set aside under Practice Book § 17-42, which applies only to such motions when judgment has not been rendered. Judgment was rendered here on the issuance of the decision on damages, and we therefore consider the defendants' claim in that regard under Practice Book § 17-43. See *Automotive Twins, Inc.* v. *Klein,* 138 Conn. 28, 33, 82 A.2d 146 (1951).

ment rendered or decree passed upon a default . . . may be set aside within four months succeeding the date on which notice was sent . . . upon the written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of such judgment or the passage of such decree, and that the plaintiff or the defendant was prevented by mistake, accident or other reasonable cause from prosecuting or appearing to make the same. Such written motion shall be verified by the oath of the complainant or the complainant's attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or the defendant failed to appear. . . ." In denying the defendants' motions, including the motion to set aside the default, the court stated that it would grant none of them because it found them "untimely and un-Practice Book like." We agree that the defendants' motion to set aside the default does not comply with Practice Book § 17-43 because it fails to show that there existed a good defense to the action at the time the default entered and because it is not sworn to. See *Water Pollution Control Authority* v. *OPT Realty, LLC*, 76 Conn. App. 711, 713, 822 A.2d 257, cert. denied, 264 Conn. 920, 828 A.2d 619 (2003); *Dister Corp.* v. *Northco, Inc.*, 50 Conn. App. 764, 765, 719 A.2d 485 (1998). Accordingly, we cannot conclude that the court abused its discretion in denying the defendants' motion.[9]

IV

The defendants finally claim that the court's award of damages was improper. In particular, the defendants

[9] The defendants also claim that the default judgment was rendered void by the plaintiff's filing of multiple amended complaints. That claim was first raised before the trial court in the January 26, 2004 motion to set aside the default. Because we have concluded that the defendants' motion to set aside was denied properly, we do not provide independent review of that claim.

allege that: (1) the facts alleged in the complaint were insufficient to support the plaintiff's claims and certain claims had been released; (2) the plaintiff's claim that the defendants converted his photographs was preempted by federal copyright law; (3) the damages awarded under CUTPA were unsupported by the evidence and excessive in violation of article first, § 8, of the constitution of Connecticut; (4) the plaintiff did not have standing to raise the claim that the defendants converted the poster images belonging to Graveen; and (5) there was no evidence that the plaintiff's reputation had been damaged to support the award of damages under count six.

A

The defendants bring a number of claims that in essence challenge the allegations contained in the plaintiff's complaint. Those include the claims that the allegations in the complaint were insufficient to make out a claim for relief under the first, fourth, fifth and ninth counts, that liability for interference with business relations under the first, fourth and fifth counts was released, and that liability for conversion of the computer and its contents was released. "A default admits the material facts that constitute a cause of action . . . and entry of default, when appropriately made, conclusively determines the liability of a defendant." (Internal quotation marks omitted.) *Schwartz* v. *Milazzo*, 84 Conn. App. 175, 178, 852 A.2d 847, cert. denied, 271 Conn. 942, 861 A.2d 515 (2004). The defaulted party may challenge the allegations of a complaint only if it files a notice of defenses within ten days of notice of the default, which the defendants here failed to do. See General Statutes § 52-221 (a); Practice Book §§ 17-34, 17-35; *Catalina* v. *Nicolelli*, 90 Conn. App. 219, 222–24, 876 A.2d 588 (2005). The defendants' claims either challenge the allegations of the complaint or otherwise

attack liability and, accordingly, cannot be raised by the defendants on appeal.[10]

## B

The defendants argue for the first time on appeal that certain of the plaintiff's claims are preempted by the federal Copyright Act (act), 17 U.S.C. § 301 et seq. In particular, the defendants maintain that the plaintiff's claim that the defendants converted twenty-three of his panoramic images was in fact a copyright claim, properly falling within the jurisdiction of the federal courts. Recognizing that a party may raise an issue of subject matter jurisdiction at any time; *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 286, 865 A.2d 474 (2005); we review that claim only inasmuch as federal preemption implicates the court's subject matter jurisdiction. See *Lewis* v. *Chelsea G. C.A. Realty Partnership, L.P.*, 86 Conn. App. 596, 601, 862 A.2d 368 (2004), cert. denied, 273 Conn. 909, 870 A.2d 1079 (2005). "It is well established that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . . [As a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Citation omitted; internal quotation marks omitted.) *New England Pipe Corp.* v. *Northeast Corridor Foundation*, 271 Conn. 329, 335, 857 A.2d 348 (2004).

The second count of the plaintiff's complaint, alleging conversion, simply stated that the plaintiff's personal

---

[10] Release, which goes to liability, must be pleaded as a special defense. *New England Savings Bank* v. *FTN Properties Ltd. Partnership*, 32 Conn. App. 143, 146, 628 A.2d 30 (1993). "Facts which are consistent with [the facts alleged in the complaint] but show, notwithstanding, that [the plaintiff] has no cause of action, must be specially alleged. . . . A limitation of liability, whether contractual or statutory, is, in substance and effect, a partial release of liability and, as such, is properly the subject of a special defense." (Citation omitted; internal quotation marks omitted.) Id.

property was retained by the defendants without his permission and that he had not been compensated for the property so retained.[11] It did not state the nature of the property converted. Only at the hearing in damages did the plaintiff clarify that the conversion claim related to the computer and to the twenty-three panoramic images therein that the plaintiff had given to the defendants for marketing and that the defendants had not returned. At the hearing in damages, testimony was presented relating to the marketing of the plaintiff's photography, the uniqueness of his product, his reputation in the business, how the marketing of inferior products under the plaintiff's name would affect him and his claim that the defendants were marketing other photographers using his product. The plaintiff testified that he had previously received an award of $7500 damages from the United States District Court for the District of Connecticut for the unauthorized use of one of his copyrighted works. He further argued that a usage fee of $7500 per photograph was the appropriate measure of damages for the defendants' use of his images. The court in its brief memorandum of decision found damages in the amount of "$172,500 as the value of the twenty-three panoramic images provided to the defendants, which were converted to their own use . . . ." The court did not articulate its reasoning for awarding damages as it did.

---

[11] Count two of the September 2, 1999 complaint reads in relevant part: "[P]laintiff had brought substantial amounts of personal property, of which plaintiff had legal ownership and superior rights of possession, to the possession of the defendants; which defendants used in their operations. . . . Defendants retained use thereof; all without the consent of plaintiff, and despite demand for their return by plaintiff. Defendants further did not compensate plaintiff for the use of said personal property or the property that was retained by defendants. . . . Defendants still retain personal property of the plaintiff. . . . Defendants have converted said personal property to their use and/or control and denied the benefit and possession of said property to plaintiff. . . . Plaintiff is due the reasonable value of such property not so returned and the reasonable value of the use of such property not returned. . . ."

On that record, we are unable to determine whether the claim pleaded and proved was in fact a copyright claim, rendering the court without jurisdiction. "It is well settled that it is the duty of the appellant to provide this court with an adequate record to review his claims. . . . Accordingly, [a] lack of pertinent factual findings and legal conclusions will render a record inadequate." (Citations omitted; internal quotation marks omitted.) *State* v. *Sargent*, 87 Conn. App. 24, 30, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005); see also Practice Book § 61-10. The defendants maintain that the death of Judge Kocay while their motion for reconsideration was pending prevented them from seeking an articulation and therefore relieved them of their duty to supply this court with an adequate record for review.[12] That is not the case. Pursuant to Practice Book § 61-10 and in the interest of the efficient administration of justice, the defendants were required at the very least to take steps before the trial court in an effort to provide this court with an adequate record to review their claim that the trial court lacked subject matter jurisdiction. In light of the defendants' failure in that regard and the presumption in favor of jurisdiction, we conclude that the court had jurisdiction to dispose of the plaintiff's claim that the defendants converted the twenty-three panoramic images.

C

The defendants claim that the court improperly awarded the plaintiff damages for conversion of the posters because the plaintiff pleaded and proved that

---

[12] Their reliance on *Cas Construction Co.* v. *Dainty Rubbish Service, Inc.*, 60 Conn. App. 294, 759 A.2d 555, (2000), cert. denied, 255 Conn. 928, 767 A.2d 101 (2001) for this proposition is misplaced. In *Cas Construction Co.*, we noted in passing that an articulation was not available because the judge who denied a motion to open the judgment died shortly after the motion was denied. Id., 298. The absence of the articulation in that case did not affect the sufficiency of the record for the purpose of appellate review.

the posters were owned by a third party, Graveen, and not the plaintiff. In essence, the defendants are challenging the plaintiff's standing to bring a claim of conversion for the posters. Standing, which implicates the court's jurisdiction, raises an issue of law over which we exercise plenary review. *Seymour* v. *Region One Board of Education*, 274 Conn. 92, 104, 874 A.2d 742 (2005). "We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) Id.

In the complaint, the plaintiff claimed that the defendants had brought into their possession "substantial amounts of personal property, of which the plaintiff had legal ownership and superior rights of possession." The plaintiff further claimed that the defendants had retained the use of the property without his consent, without compensation and despite a demand for its return. During the hearing in damages, the plaintiff presented testimony that he and Graveen had agreed to enter into a business relationship in which the plaintiff would buy wholesale posters from Graveen and market them through the defendants. He further testified that Graveen had provided him with $3000 worth of posters, for which he was responsible, that he in turn gave the posters to the defendants to market and that the defendants instead marketed the posters for their own benefit. Marc Weiner testified that Graveen gave him the posters and that he paid Graveen for the posters directly. He further testified that the plaintiff was Graveen's partner in the poster business and that Graveen was responsible for compensating the plaintiff.

"[C]redibility is a matter for the trier of fact to determine. In a [proceeding] tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . Where there is conflicting evidence . . . we do not retry the facts or pass on the credibility of the witnesses. . . . The probative force of conflicting evidence is for the trier of fact to determine." (Internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 71 Conn. App. 715, 743, 805 A.2d 76 (2002). In awarding the plaintiff $3000 for the conversion of the posters, the court clearly chose to credit the testimony of the plaintiff over that of the defendants. That determination rested squarely within the discretion of the court, and we will not disturb it on appeal.

The argument that Graveen was the owner of the posters for the purpose of the conversion claim, regardless of who provided the defendants with the posters, also does not avail the defendants. Our Supreme Court has stated that "[c]onversion is some unauthorized act which deprives another of his property permanently or for an indefinite time; some unauthorized assumption and exercise of the powers of the owner to his harm. The essence of the wrong is that the property rights of the plaintiff have been dealt with in a manner adverse to him, inconsistent with his right of dominion and to his harm. . . . The term owner is one of general application and includes one having an interest other than the full legal and beneficial title. . . . The word owner is one of flexible meaning, and it varies from an absolute proprietary interest to a mere possessory right. . . . It is not a technical term and, thus, is not confined to a person who has the absolute right in a chattel, but also applies to a person who has possession and control thereof." (Citation omitted; internal quotation marks omitted.) *Label Systems Corp.* v. *Aghamohammadi*, 270 Conn. 291, 329, 852 A.2d 703 (2004). Moreover, "a

converter of property may not defend an action by a prior possessor of the property by asserting that a third person is the true title holder . . . ." *Hall* v. *Schoenwetter*, 239 Conn. 553, 564 n.14, 686 A.2d 980 (1996). As represented by the plaintiff and credited by the court, the plaintiff had at least a possessory interest in, if not a proprietary right to, the posters regardless of whether title had passed to the plaintiff or Graveen remained the true owner of the posters.[13] Accordingly, the plaintiff had standing, as a matter of law, to bring a claim for conversion of the posters.

### D

The defendants claim that the damages awarded by the court under count three alleging violations of CUTPA were not supported by the evidence and were excessive. In particular, they claim that the compensatory damages awarded were the same as those awarded under counts one, two, four and five, claims that they assert were released, that belonged to a third party or that were outside the scope of the pleadings. In addition, the defendants maintain that the court's award of $245,000 in punitive damages was based on a relationship to actual damages and, thus, constitutes an exces-

---

[13] In that regard, we note that a bailee may recover for conversion by a third party of property conveyed to him by a bailor. See *Hall* v. *Schoenwetter*, supra, 239 Conn. 564 n.14. If the plaintiff did not in fact obtain ownership of the posters from Graveen, his position appears very much like that of a bailee. A bailee is one "to whom goods are entrusted by a bailor . . . the party to whom personal property is delivered under a contract of bailment." Black's Law Dictionary (6th Ed. 1990). Bailment is "[a] delivery of goods or personal property by one person (bailor) to another (bailee), in trust for the execution of a special object upon or in relation to such goods, beneficial either to the bailor or bailee or both, and upon a contract, express or implied, to perform the trust and carry out such object, and thereupon either to redeliver the goods to the bailor or otherwise dispose of the same in conformity with the purpose of the trust." Id. Here, Graveen entrusted the posters to the plaintiff for the purpose of marketing them with the defendants' assistance.

sive fine in violation of article first, § 8, of the constitution of Connecticut.

We have already concluded that compensatory damages were awarded properly under counts one, two, four and five, and, therefore, do not address those claims again here. As for the claim that the punitive damages awarded were excessive, the defendants provide no analysis or citation in support thereof. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citation omitted; internal quotation marks omitted.) *Haggerty* v. *Williams*, 84 Conn. App. 675, 684, 855 A.2d 264 (2004).[14] We accordingly decline to review the defendants' claim.

E

The defendants also claim that there was no evidence that the plaintiff's reputation had been damaged to support an award of damages under counts six and seven alleging defamation. We disagree.

"Generally, [t]he determination of the amount of damages to be awarded in a defamation case is peculiarly within the province of the [fact finder], to be made in accordance with the weight of the evidence . . . and

---

[14] The defendants seek to evade their responsibility to brief their claims adequately by asserting that because Judge Kocay died during the pendency of the motion for reconsideration, they were unable to seek an articulation of his reasoning for awarding punitive damages. As discussed in part IV B, the death of a judge does not relieve a party of its duty to present the court with an adequate record. It certainly does not release a party from the basic requirement that legal claims be adequately briefed.

must be left undisturbed unless there is a clear showing of error, prejudice, perversity, or corruption." (Internal quotation marks omitted.) *DeVito* v. *Schwartz*, 66 Conn. App. 228, 236, 784 A.2d 376 (2001). On the basis of our review of the record, we cannot conclude that the court's award of $10,000 in compensatory damages for defamation was clearly improper.

The judgment is affirmed.

In this opinion the other judges concurred.